IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HENRY SIMMONS, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 19-0743-WS-M |
| | ) | |
| WASHINGTON COUNTY BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
|     Defendant. | ) | |

**ORDER**

This matter comes before the Court on defendant's Motion for Summary Judgment (doc. 36). The Motion has been briefed and is now ripe.[1]

**I.    Factual Background.[2]**

Plaintiff, Henry Simmons, is an African-American male who is employed as a teacher by the defendant, Washington County Board of Education (the "Board"). In the summer and fall of

---

[1]    Also pending is defendant's Motion to Strike (doc. 48) the three supporting declarations submitted by plaintiff with his Response to the Motion for Summary Judgment. The Court will address those portions of the Motion to Strike that are pertinent to adjudication of the Rule 56 Motion on an as-needed basis throughout this Order, without considering or ruling on those aspects of the Motion to Strike that are not material to the summary judgment issues.

[2]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment …. Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] Plaintiff's version of the facts drawing all justifiable inferences in [his] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

2017, Simmons applied for three administrative positions at the Board, but was passed over for each of them in favor of white applicants.  On that basis, Simmons filed suit against the Board in this District Court alleging the following causes of action: (i) a claim that the Board violated the Equal Protection Clause of the Fourteenth Amendment by discriminating against Simmons because of his race (Count I); (ii) a claim that the Board violated Title VII of the Civil Rights Act of 1964, as amended, by denying promotional opportunities to Simmons because of his race (Count II); and (iii) a claim that the adverse employment actions taken against Simmons because his race violate 42 U.S.C. § 1981, made actionable by 42 U.S.C. § 1983 (Count III).  For its part, the Board denies that any of the challenged hiring decisions were based on race, and now seeks entry of summary judgment on all three of Simmons' claims as to all three promotions.

> ### A.      *Plaintiff's Qualifications and Experience.*

Simmons has 20 years of experience as an employee of the Board.  (Simmons Decl., ¶ 1; doc. 44-3, PageID.338.)  He has worked in the capacities of physical education teacher, coach, driver's education teacher, and administrative assistant.  (*Id.*)  His coaching experience includes six years as head coach of the varsity boys' basketball team at McIntosh High School.  (*Id.*)  Prior to beginning his teaching career, Simmons received a bachelor's degree in physical education from Alabama State University in 1997.  (Doc. 44-8, PageID.352.)  He also earned a master's in education degree in 2003.  (Doc. 44-11, PageID.355.)

In 2013, Simmons was named the Administrative Assistant for McIntosh Elementary School.  (Simmons Decl., ¶¶ 2-3, PageID.338-39.)  This was a part-time, unofficial designation. In this capacity, Simmons was placed in charge of "the buses, the car riders, attendance, and discipline" for the school on a part-time basis, while retaining his duties as physical education teacher.  (*Id.*, ¶ 3, PageID.339.)[3]  In the absence of the principal, Dr. Edna Billingsley, Simmons was "in charge of the daily needs of the school," such that Dr. Billingsley would contact him to let him know when she would be absent or when she was running late.  (*Id.*, ¶ 4.)  Dr. Billingsley had held the title of Administrative Assistant before being promoted to the position of Principal

---

[3]      According to a daily schedule in the summary judgment record, Simmons performed administrative duties for less than three hours per day, including 45 minutes of attendance duties, an hour and 40 minutes of breakfast / bus duty, and 25 minutes of afternoon bus duty, patrol and car rider duties.  (Dickey Aff., ¶ 4 & Exh. B, doc. 37-5, PageID.196, 216.) The remainder of Simmons' workday was devoted to teaching physical education in 45-minute increments to each grade level from kindergarten through fifth grade.  (*Id.*)

of McIntosh Elementary.  (*Id.*, ¶ 7.)  Simmons continues to work at McIntosh Elementary School in the capacity of Administrative Assistant today.  (*Id.*, ¶ 10, PageID.340.)[4]

**B.      The Leroy High School Principal Vacancy.**

On July 24, 2017, the Board issued a job announcement for the position of Principal at Leroy High School.  (Dickey Aff., ¶ 6 & Exh. C, doc. 37-5, PageID.197, 217.)  The Board received timely applications from four candidates, including Simmons, Stacy Dees, Leo Leddon and Roderick Hamilton.  (*Id.*)  Board Superintendent John Dickey appointed a three-person panel to conduct interviews and make recommendations for the vacancy.  (*Id.*, ¶ 7.)  This interview panel reviewed each candidate's application submission and conducted interviews using questions prepared in advance, after which they scored each candidate based on his or her appearance, education, experience, interview and writing sample.  (*Id.*, ¶ 8.)  Based on those score sheets, the interview panel recommended that Stacy Dees (a white female) be selected for the Leroy High School Principal position.  Dees received a score of 80 points (out of a possible 120), as compared to 70 points for Simmons.  (*Id.*, ¶ 10, PageID.197-98.)  The score sheets reflect that the key categories separating the candidates were the interview, in which Dees received a score of 25 points ("Excellent Responses") and Simmons received a score of 20 points ("Good Responses"), and the writing sample, in which Dees received a score of 20 points ("Good Responses") and Simmons received a score of 10 points ("Fair Responses").  (Doc. 37-5, PageID.218-19.)[5]  Dickey reviewed the applications and determined that Dees was the best

---

[4]      Defendant's evidence largely aligns with plaintiff's as to the nature of the Administrative Assistant position and the duties that Simmons fulfilled in that capacity.  Indeed, defendant's evidence is that the Administrative Assistant "performs some administrative tasks upon the request of the principal," which "may include serving as the Administrator in the principal's absence."  (Dickey Aff., ¶ 5, doc. 37-5, PageID.196.)  According to defendant, Simmons "was assigned administrative duties by Principal Edna Billingsley," with such duties to include "inputting attendance in INOW, morning bus duty, and afternoon bus duty, patrol and car riders."  (*Id.*, ¶ 4.)

[5]      With regard to Dees' interview score, plaintiff submits the Declaration of Carmen Williams, who was one of the panel members selected by Superintendent Dickey.  Williams expressed concern that Dees "answered each question with responses that were almost identical to the model answers provided to us by the superintendent."  (Williams Decl., ¶ 6, doc. 44-6, PageID.349.)  In its Motion to Strike, defendant objects that the Williams Declaration is speculative and lacking in personal knowledge on this point.  (Doc. 48, PageID.450.)  The Motion to Strike is **DENIED** as to this aspect of the Williams Declaration.  Having reviewed the (Continued)

candidate for the position, based on her qualifications, job experience and interview.  (Dickey Aff., ¶¶ 11-12, PageID.198.)  On that basis, Dickey recommended that Dees be selected for the Principal position, and the Board approved his recommendation.  (*Id.*, ¶ 12, PageID.198-99.)

### C. *The Leroy High School Assistant Principal Vacancy.*

The appointment of Stacy Dees as Principal of Leroy High School created another administrative vacancy at that facility, inasmuch as she had previously been employed as Assistant Principal at Leroy High School.  (Dickey Aff., ¶ 12, PageID.198-99.)  On August 17, 2017, the Board issued a job announcement for the Assistant Principal position.  (*Id.*, ¶ 13 & Exh. G, PageID.199, 241.)  Five candidates submitted timely applications, including Simmons, Gerald Kelly, Jason Massey, Jerry Nobles and Tereance Pinkney.  (*Id.*)  Principal Dees and two other Board employees served on the panel to conduct interviews and make a hiring recommendation to Superintendent Dickey.  (*Id.*, ¶ 14.)  The panel evaluated and scored each applicant on the criteria of degree/certification, years of employment in system, experience, professional references, writing assessment, and personal interview.  (*Id.*, ¶¶ 15-16 & Exh. H, PageID.199, 242.)  Applicant Jason Massey (white male) received the highest overall score (96 out of 110 points), with Simmons placing third at 93.3 points.  (*Id.*, Exh. H.)  The scoresheet reflects that Simmons equaled or exceeded Massey's scores in most categories (including experience, where each of them received 8 out of 10 points), but that Massey scored far higher in the interview than Simmons (55 out of 60 points for Massey, 47.3 points for Simmons).  (*Id.*)[6] The candidates' relative interview performance thus appears to be the critical selection factor driving the outcome of that hiring process.

Superintendent Dickey averred that Massey "was the best candidate for the position based on his interview, experience and qualifications."  (Dickey Aff., ¶ 18, PageID.200.)  In particular, Massey had approximately 20 years of teaching experience as a math teacher, had served as a part-time Assistant Principal at Leroy High School in the 2010-2011 school year, and

---

model answers and having been present during the interview, Williams is competent to testify as to her lay opinion concerning the degree of similarity between the two, as well as her reaction to same as a panel member.  Defendant's objection is **OVERRULED**.

[6]     The interview scores were derived as follows: Dees prepared questions in advance of the interview.  Following each interview, the panel members rated each applicant's answer to each question on a scale of 1 to 5.  (Doc. 47-1, PageID.432.)

had gained administrative experience as Athletic Director and Head Football Coach at Clarke County High School from 2011-2013 and at Leroy High School in 2013.  (*Id.*, ¶¶ 18-19.) Additionally, Dees had previously observed and supervised Massey, and was familiar with his leadership performance and abilities.  (*Id.*, ¶ 20, PageID.200-01.)  Dickey recommended that Massey be selected for the Assistant Principal position, and the Board voted in favor of that recommendation.  (*Id.*, ¶ 21.)

> ### D.    *The Millry High School Principal Vacancy.*

On October 27, 2017, the Board announced a vacancy for the position of Principal at Millry High School.  (Dickey Aff., ¶ 22 & Exh. K, PageID.201, 255.)  A total of five candidates applied, including Simmons, Curtis Kirkland, Kyle Nobles, Lisa Becton, and Leo Leddon.  (*Id.*) Superintendent Dickey and two other people comprised the interview panel to review the applications, interview the candidates, and make a recommendation.  (Dickey Aff., ¶¶ 23-24.) The panel scored each applicant on the metrics of degree/certification, years of employment in system, experience, professional references, writing assessment and personal interview.  (*Id.*, Exh. L, PageID.256.)  Of the three applicants, Curtis Kirkland (white male) received the highest overall score of 57 points (out of a possible 72), with Simmons receiving a total of 47 points. (*Id.*, ¶ 25 & Exh. L.)  Kirkland outscored Simmons by a sizeable margin in the areas of references (9 points versus 6 points) and the interview (16 points versus 10).  (*Id.*)  Kirkland's qualifications included 17 years of teaching experience, two years as Athletic Director at Fruitdale High School, four years as a part-time Assistant Principal at Fruitdale High School, and four years as Administrative Assistant at Millry High School (from 2014 to 2017) where he served as the principal's designee when the principal was not on campus.  (*Id.*, ¶ 27, PageID.202.)  Additionally, Superintendent Dickey contacted both Kirkland's and Simmons' immediate supervisors during the evaluation process.  Kirkland's supervisor (who was the outgoing principal of Millry High School) gave a glowing report about Kirkland's job performance and recommended him for the Principal vacancy.  (*Id.*, ¶ 28, PageID.203.) Simmons' supervisor, Dr. Edna Billingsley, did not recommend Simmons and expressed dissatisfaction with his performance of administrative tasks.  (*Id.*)[7]

---

[7]    Plaintiff takes issue with defendant's statement of fact that "Dr. Billingsley did not recommend Mr. Simmons and expressed dissatisfaction with Mr. Simmons' performance of (Continued)

Based on the committee's evaluations and the information obtained, Superintendent Dickey recommended to the Board that Kirkland be selected to fill the Principal vacancy at Millry High School. (*Id.*, ¶ 20.) The Board adopted that recommendation and hired Kirkland over Simmons for that administrative position. (*Id.*)

## II.    Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the

---

the administrative tasks assigned to him." (Doc. 44-1, PageID.324.) In particular, plaintiff argues that no evidence in this case supports such an assertion. (*Id.*) But the Dickey Affidavit directly and unequivocally supports defendant's factual proposition by recounting Superintendent Dickey's non-hearsay recollection of his conversation with Dr. Billingsley. (There is no hearsay problem here because Superintendent Dickey's statement would be admissible to show what Dr. Billingsley said rather than the truth of the matters she asserted.) The Billingsley Affidavit likewise supports this proposition in two respects. First, Dr. Billingsley avers that she assigned Simmons certain administrative duties, including entering attendance and absence data in a computer program, but that "[s]ometime thereafter, Mr. Simmons unilaterally stopped entering the attendance and absence data." (Billingsley Aff., ¶ 5, doc. 37-4, PageID.193.) Second, Dr. Billingsley indicates that she was aware of Simmons' applications for administrative positions in 2017, but that she "did not provide a recommendation that he be hired for any of the positions." (*Id.*, ¶ 6.) Absent any record evidence raising a contrary inference, the Court accepts for summary judgment purposes that Dr. Billingsley did not provide a favorable recommendation on Simmons' behalf in response to Superintendent Dickey's inquiry.

In an attempt to create such a contrary inference, plaintiff submits the Declaration of Hazel White (doc. 44-5). White is a Reading Specialist at McIntosh Elementary School, where Dr. Billingsley is Principal and where Simmons had been performing administrative duties prior to the Millry High School Principal vacancy. (White Decl., ¶¶ 2-3, PageID.346.) White states in her declaration that Simmons "had served in the administrative role as needed, without any problems or issues that I am aware of, and I consider myself a very knowledgeable leader of McIntosh Elementary School." (*Id.*, ¶ 6, PageID.347.) For White to state that she was not aware of any problems or issues is not probative of whether Dr. Billingsley perceived "any problems or issues" with Simmons' performance. After all, it is Dr. Billingsley's reported perception of "problems or issues" that matters, not White's, and there is no record support for the notion that White would have been aware one way or the other of whether Dr. Billingsley perceived any such "problems or issues." Therefore, even without reaching defendant's objection that the White Declaration should be stricken because of plaintiff's failure to disclose her as a witness in a timely manner as required by the Federal Rules of Civil Procedure, the White Declaration does not give rise to genuine issues of material fact as to Simmons' job performance or, more precisely, Dr. Billingsley's statements to Superintendent Dickey about Simmons' job performance in connection with the Millry High School Principal vacancy in October 2017.

district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.   Analysis.**

   *A.   Application of the* **McDonnell Douglas** *Framework.*

   Despite the fact that Simmons formulates his claims in three different ways (a Title VII claim, a § 1981 claim, and a § 1983 Equal Protection claim), the analysis is identical for each of Counts I through III.  *See, e.g., Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) ("We pause to note that discrimination claims … brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework."); *McQueen v. Alabama Dep't of Transportation*, 769 Fed.Appx. 816, 821 (11th Cir. Apr. 23, 2019) ("Discrimination claims brought under § 1983 based on § 1981 and the Equal Protection Clause are subject to the same standards of proof and use the same analytical framework as intentional discrimination claims brought under Title VII.").[8]

---

   [8]      The Board suggests that the analysis of Simmons' claims may differ insofar as he may "attempt to assert a Section 1983 claim against the Board due to recommendations or discretionary decisions made by former Superintendent Dickey."  (Doc. 38, PageID.289-90.)  In support of this contention, the Board relies on the well-worn proposition that § 1983 liability cannot be predicated solely on a theory of *respondeat superior*.  But plaintiff's claims reflect that (Continued)

The parties agree that all of Simmons' discrimination claims are properly analyzed using the well-worn *McDonnell Douglas* burden-shifting framework. "When proceeding under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination ...." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220 (11th Cir. 2019). "If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221. "Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination ...." *Id.*

In the failure-to-promote context, the elements of a *prima facie* case of racial discrimination are that "a plaintiff must show that (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; (4) the person who received the promotion was not a member of the plaintiff's protected group and had lesser or equal qualifications." *Cooper v. Georgia Dep't of Transportation*, 837 Fed.Appx. 657, 668 (11th Cir. Nov. 17, 2020); *see also Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001) ("[t]o establish a *prima facie* case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted") (citations omitted). On summary judgment, the Board has not argued that Simmons has failed to establish a *prima facie* case as to any of the three promotion decisions in question. Accordingly, the Court assumes that Simmons has met his initial burden of making a *prima facie* case of discriminatory failure to promote with respect to the Leroy High School Principal position, the Leroy High School Assistant Principal decision, and the Millry High School Principal position.

Once a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for each of the challenged promotion decisions. "[T]o satisfy this intermediate burden, the employer need only produce

---

he is not seeking to hold the Board liable for decisions that Superintendent Dickey made; to the contrary, defendant's own evidence confirms that all three of the challenged promotion decisions were made by the Board, not by Superintendent Dickey. (Doc. 37-5, ¶¶ 12, 21, 29, PageID.198-99, 201, 203.) Plaintiff is seeking to hold the Board liable for its own hiring decisions, not for decisions made by someone else; therefore, the doctrine that § 1983 liability cannot be predicated on *respondeat superior* has no apparent application here.

admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had *not* been motivated by discriminatory animus." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citation omitted). In the failure-to-promote context, "[w]here several candidates are well-qualified for a single position, … the employer's testimony that it chose the person it thought best qualified is ordinarily sufficient" to satisfy the employer's burden of coming forward with a legitimate nondiscriminatory reason. *Cotton v. Enmarket Inc.*, 809 Fed.Appx. 723, 725 (11th Cir. Apr. 30, 2020) (citation and internal quotation marks omitted). With respect to two of the promotion decisions (the exception being the Leroy High School Assistant Principal vacancy), there appears to be no dispute between the parties that the Board has met this burden of production by articulating that, with respect to each promotion decision, it concluded that the successful applicant was more qualified than Simmons and therefore did not select Simmons for the position.

The bulk of the legal issues presented on summary judgment in this case concern whether Simmons can "show that the seemingly legitimate reason the employer gave was pretextual – i.e., the proffered reason was not the true reason for the employment decision." *Kidd v. Mando American Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013) (citation and internal quotation marks omitted). "The critical decision that must be made is whether the plaintiff has created a triable issue concerning the employer's discriminatory intent." *Flowers v. Troup County, Ga., School Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015) (citation and internal marks omitted). The question of pretext marks a key battleground framed by the parties' summary judgment submissions.

"In the context of a promotion … a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [applicant] who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Brooks v. County Com'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citations omitted). Rather, to show pretext and withstand summary judgment, "[a] plaintiff must show that the disparities between the successful applicant's and [his] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Brooks*, 446 F.3d at 1163 (citations and internal quotation marks omitted). "An employee's opinion about his own qualifications [is] insufficient to create a triable issue of fact." *Cotton*, 809 Fed.Appx. at 726 (citations omitted). And "well-established

circuit precedent prohibits us from deciding whom as between two candidates an employer *should* have hired." *Kidd*, 731 F.3d at 1206. "Our job is instead to determine whether the employer gave an honest explanation to justify its hiring decisions." *Id.* at 1207 (citation and internal quotation marks omitted). This Court's task on summary judgment, then, is to review the qualifications of each selected candidate and Simmons, and to determine whether the difference between the two is of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over Simmons.[9]

### B.   The Leroy High School Principal Vacancy.

With regard to the selection of Stacy Dees over Simmons for the Leroy High School Principal position, the Board justifies this decision by stating that "(1) the interview committee scored Dees higher than Simmons; and (2) Dees has more substantive administrative experience than Simmons." (Doc. 38, PageID.282.) Record evidence lends credence both of these propositions. In particular, the applicable score sheet reflects that the interview committee awarded Dees a score of 80 points out of a possible 120, while scoring Simmons at 70 points. Likewise, a side-by-side comparison of the substantive administrative experience of Dees and Simmons supports a reasonable conclusion that Dees outshined Simmons in this area. Dees' substantive administrative experience included serving as the full-time Assistant Principal at Leroy High School during the 2016-17 school year, including at the time of the interviews, plus having served as Administrator Substitute/Designee and Test Coordinator in the Phenix City

---

[9]      In his summary judgment submission, Simmons correctly notes that in April 2019, the Equal Employment Opportunity Commission issued a Letter of Determination finding that "the evidence obtained during the investigation establishes that the [Board] violated Title VII of the Civil Rights Act of 1964, as amended." (Doc. 44-7, PageID.350.) In support of this determination, the EEOC's Letter cited the following: (i) a finding that "evidence of record" showed that Kirkland had "less experience" than Simmons; (ii) a finding that the Board's position that Simmons "did not have a good work ethic and was not willing to take on additional responsibility is not supported by the evidence of record given his duties and responsibilities;" (iii) a finding that the Board had credited Kirkland with his time as an Administrative Assistant "yet failed to credit five years of [Simmons'] experience in the same capacity;" and (iv) a finding that Simmons has over 20 years of teaching experience. (*Id.*) Of course, "EEOC findings are not binding with regard to subsequent discrimination suits in federal court." *Danielle-DiSerafino v. District School Board of Collier County, Florida*, 756 Fed.Appx. 940, 944 (11th Cir. Nov. 29, 2018). "The probative value of EEOC findings is left to the district court's discretion." *Id.* So, while the EEOC Letter of Determination is properly considered on summary judgment, it is not binding, and this Court "must conduct a *de novo* review of the claims." *Id.*

School System.  (Dickey Aff., ¶ 11, doc. 37-5, PageID.198.)  By contrast, by his own reckoning Simmons had been no more than a part-time Administrative Assistant at McIntosh Elementary School.  His administrative duties were limited to buses, car riders, attendance and discipline, and being "in charge of the daily needs of the school" in the principal's absence.  (Simmons Decl., ¶¶ 3-4, PageID.339.)

As noted, it is Simmons' burden to show that each of the Board's stated reasons for not promoting him to the Leroy High School Principal position was pretextual.  *Chapman v. AI Transport*, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.") (citation omitted).  Plaintiff makes some attempt to question the validity of the interview committee's scores of Dees by arguing that there are disputes of material fact as to "whether Stacey [*sic*] Dees was not actually the best qualified candidate for the vacancy and having possibly had advance notice of the questions asked of her in the interview phase."  (Doc. 44-1, PageID.323.)  But plaintiff fails to articulate any disparities between his qualifications and those of Dees, much less to make a showing that those disparities were of such weight or significance that no reasonable person would have chosen Dees over Simmons.  Comparing Dees' and Simmons' qualifications side by side, no reasonable finder of fact could conclude that any disparities weighed so strongly in plaintiff's favor that the Board could not reasonably have determined that Dees was more qualified than Simmons.[10]

The conclusion is even more stark with respect to the other legitimate nondiscriminatory reason articulated by the Board for this promotion decision, namely that Dees had more

---

[10]    The question of whether Dees had advance notice of the interview questions and model answers is something of a red herring and is not necessary to resolve the summary judgment question of the applicants' relative qualifications.  Nonetheless, the Court observes that plaintiff's only evidence on this point is the Declaration of Carmen Williams, one of the interview committee members, who stated that Dees "answered each question with responses that were almost identical to the model answers provided to us by the superintendent." (Williams Decl., ¶ 6, PageID.349.)  Plaintiff identifies no evidence other than Williams' conclusory statement.  There is thus no way to evaluate or gauge the accuracy of this nonspecific observation.  Besides, even if Dees' advantage over Simmons in the interview portion were erased or otherwise set aside, she still would have received a higher score than Simmons overall thanks to her 10-point advantage in the writing sample category, as to which plaintiff offers no plausible suggestion of impropriety.

substantive administrative experience than Simmons.  Nowhere in summary judgment briefing does plaintiff even attempt to make a showing that this stated reason was a pretext for unlawful discrimination.  Nor could he have done so successfully on this record.  Record evidence shows that Dees was the incumbent full-time Assistant Principal at Leroy High School at the time of the interviews, and that she had previous administrative experience in the Phenix City School System.  Meanwhile, Simmons performed only limited, part-time administrative duties at McIntosh Elementary, while spending the bulk of his workday teaching physical education.  On this record, it was certainly not unreasonable for the Board to conclude that Dees possessed greater substantive administrative experience than Simmons, and to rely on that determination in awarding her the Leroy High School Principal position.

For all of these reasons, plaintiff has not shown pretext as to the Board's selection of Stacy Dees over Simmons for the position of Principal of Leroy High School in August 2017.  Accordingly, defendant's Motion for Summary Judgment is due to be **GRANTED** with respect to the portion of plaintiff's discrimination claims concerning that promotion decision.

### C.      The Leroy High School Assistant Principal Vacancy.

Recall that the Board's proffered nondiscriminatory reason for selecting Jason Massey over Simmons for the Leroy High School Assistant Principal position was that Massey "was viewed as the best candidate and was qualified for the position based on his experience, education and interview."  (Doc. 38, PageID.284.)  According to the Board, "Massey was more qualified for the position of Assistant Principal at Leroy High School" (*id.*, PageID.285) than Simmons was.

In an effort to show pretext, plaintiff takes aim at the Board's assessment by arguing that "[a] comparison of Massey's qualifications with those of Mr. Simmons show[s] that Defendant's assertion is false."  (Doc. 44-1, PageID.331.)  According to plaintiff, Simmons had five years of administrative experience, while Massey had only one year of administrative experience.  Moreover, plaintiff says, Massey was credited for service as an athletic director and football coach, while Simmons was not credited for six years of service as a head basketball coach at two different high schools.  (*Id.*, PageID.331-32.)  Plaintiff's argument about not receiving credit for experience is not persuasive.  As an initial matter, defendant correctly points out that the nature of Massey's administrative experience was qualitatively different than Simmons'.  Specifically, Simmons had performed part-time, limited administrative duties at McIntosh Elementary School

on an as-needed basis, whereas Massey had held the official administrative position of part-time Assistant Principal at Leroy High School (the same school for which the Assistant Principal vacancy was being filled in August 2017). The Board could reasonably have determined that Simmons' longer duration of performing administrative duties was not sufficient to overcome the lesser nature of that administrative work, as compared to Massey's. Besides, the interview committee gave Massey and Simmons identical 8 out of 10 scores on the "Experience" metric of the relevant score sheet. (Doc. 37-5, PageID.242.) Therefore, it appears that contrary to plaintiff's objection, he was given credit for his equivalent leadership experience to Massey.

That said, the Board's evidence is that the interview was the driving force of its decision to select Massey over Simmons. Indeed, the selection committee's composite scoresheet reflects that what differentiated Massey from Simmons was the interview itself, with Massey receiving a composite interview score of 55 points out of 60, as compared to Simmons' score of 47.3. (*Id.*) Because the candidates' total scores were 96 points for Massey and 93.3 points for Simmons, the Board's evidence shows that the interview (which favored Massey by a 7.7-point margin) was the deciding factor. (*Id.*) The Board has thus staked itself to a position that Massey was selected over Simmons because the committee found that "Massey interviewed better than Simmons." (Doc. 47, PageID.415.)[11] Without the determination that "Massey interviewed better than Simmons," Simmons would have scored better than Massey overall and presumably would have been selected for the position; therefore, the interview is paramount.

Faced with these unfavorable interview scores, plaintiff concedes that he "does not challenge the fairness of the interview questions and acknowledge[s] that they would fairly test knowledge relevant to the open position." (Doc. 44-1, PageID.333.) Nonetheless, plaintiff insists that defendant's evidence is deficient because "Defendant produced nothing to justify or

---

[11]     This position is reinforced by the individual committee members' scoresheets for the interview. Each judge rated each candidate's answer to each of 12 questions on a 5-point scale, with 5 representing the best. Committee member Kathy Jo Foster scored Massey a 59 out of 60 on the interview, while scoring Simmons a starkly lower 40 out of 60. (Doc. 44-20, PageID.381, 383.) Likewise, committee member Principal Dees scored Massey at 55 points on the interview, versus 48 points for Simmons. (*Id.*, PageID.385, 387.) Only committee member Olathia Anderson gave the advantage to Simmons, but then only by a slender 54 to 51 margin. (*Id.*, PageID.377, 379.) These scoresheets in the aggregate show that the committee strongly favored Massey over Simmons in the interview portion of the evaluation, but they do not contain any information or detail whatsoever explaining why.

support the interview scores assigned to Simmons or Massey. … So, … this court is left with unsupported and purely subjective interview scores that cannot stand without much more." (Doc. 44-1, PageID.333-34.)  Of course, the subjective nature of the interview scores does not inherently disqualify them as a legitimate nondiscriminatory reason for the challenged hiring decision.  After all, "[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext under Title VII or other federal employment discrimination statutes." *Denney*, 247 F.3d at 1185.  Nonetheless, plaintiff relies on the Eleventh Circuit's pronouncement that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason ***if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion***." *Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (citation omitted and emphasis added).  According to plaintiff, defendant has supplied only the raw interview scores, without the requisite "clear and reasonably specific factual basis" underlying the interview committee members' subjective opinions.

Plaintiff is correct that the record is devoid of any explanation for why individual committee members rated Massey's and Simmons' interview performance the way they did.  The question is whether such specificity is legally required of an employer to obtain summary judgment in a discriminatory promotion case.  In *Chapman v. AI Transport*, 229 F.3d 1012 (11th Cir. 2000), the employer said it declined to hire the plaintiff because of the plaintiff's "poor interview," but the decisionmakers "also explained the grounds for their evaluation with reasonable clarity and specificity given the passage of time" by indicating that the plaintiff's interview answers were "imprecise" and "unclear." *Id.* at 1035.  Here, the Board's sole attempt to justify its subjective evaluation that Massey interviewed better than Simmons is to produce each committee member's question-by-question scoresheet reflecting how the committee evaluated each candidate by numerical rating on each question.  Nothing on those scoresheets provides any reasoning or explanation for any of the scores assigned by any committee member to any candidate's answer.  Nor has the Board sought to bolster those scoresheets with affidavits or declarations from the committee members giving their overall or question-specific impressions of the candidates' interview performance or providing any factual context or narrative beyond the raw numerical scores themselves.

The shortcoming with defendant's showing is that the record does not reflect the reasons for a particular numerical rating for a particular candidate's answer. We have no idea why the committee rated Massey substantially higher than Simmons in the interview portion, only that it did so. Recognizing that fact, the Board insists that simply having a scoring system itself is enough to constitute the necessary "clear and reasonably specific factual basis" upon which it based its subjective opinion. That proposition does not appear to find support in Eleventh Circuit precedent. *See Conner v. Lafarge North America, Inc.*, 343 Fed.Appx. 537, 543 (11th Cir. Sept. 1, 2009) ("Lafarge has supported its subjective interview scoring system with specific factual bases in the form of the interview panel's concern over Conner's willingness to discipline employees and his lack of software skills."); *Johnson v. City of Mobile, Ala.*, 321 Fed.Appx. 826, 833 (11th Cir. Mar. 20, 2009) (where defendant failed to hire plaintiff because of poor performance in an interview, defendant nonetheless provided a clear and reasonably specific explanation that plaintiff "was tentative and lacked self-confidence during the interview"); *Roper v. Foley*, 177 Fed.Appx. 40, 50 (11th Cir. Apr. 18, 2006) (defendant's subjective reason, namely the review board's opinions of candidates' performances during interviews, was sufficient where defendant "submitted supporting evidence, including that [the successful candidate] articulated better reasons for why he was their best candidate").[12]

Here, then, is the problem for defendant's Motion for Summary Judgment as it relates to the Leroy High School Assistant Principal vacancy that the Board chose to fill with Jason Massey, rather than Simmons. The Board says it selected Massey "based on his experience, education and interview." (Doc. 38, PageID.284.) The "Applicant Scoring Rubric" for that position shows that Massey and Simmons received identical 10-point scores for "Degree/Certification" and identical 8-point scores for "Experience." (Doc. 37-5, PageID.242.) By defendant's own evidence, then, the interview was the differentiating factor, with the committee rating Massey nearly 8 points higher than Simmons on the interview scores. An

---

[12] Defendant's reliance on *Matthews v. City of Mobile*, 2016 WL 1736061 (S.D. Ala. May 2, 2016), for the proposition that an interview scoring system by itself is sufficient to constitute a "clear and reasonably specific factual basis" is misplaced. Notably, in *Matthews*, the court specifically observed that "Defendants have submitted Affidavits from the interview panel members, a racially diverse panel, ***explaining how they scored each candidate***." *Id.* at *25 (emphasis added). Here, by contrast, the record is entirely lacking in any explanation by any of the interview panelists.

employer's perception of interview performance is necessarily subjective.  Binding precedent teaches that "[a] subjective reason [for a challenged hiring decision] is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Chapman*, 229 F.3d at 1034.  The Board has not articulated "a clear and reasonably specific factual basis" for why it thinks Massey interviewed better than Simmons.  From a searching review of the record, the Court has no inkling what the interview committee thought Massey did well in the interview, or what Simmons did badly.  There is no evidence as to even the subject matter of the questions for which Simmons was rated poorly or for which Massey was rated highly.  We have no idea why Massey was rated substantially higher in the interview than Simmons because the Board has declined to articulate that information.  In short, the Board has provided nothing other than a list of numerical scores that correlate to unidentified questions to justify its evaluation of the interview performance that was so critical to this promotion decision.

In the Court's view, defendant's showing falls short of the "clear and reasonably specific factual basis" required by *Chapman* and its progeny.  As such, because the Board has tethered its hiring decision to a subjective reason for which the requisite clear and reasonably specific factual basis has not been provided, the Court concludes that the Board has failed to satisfy its burden of coming forward with a legitimate nondiscriminatory reason for the challenged personnel action.  For that reason, defendant's Motion for Summary Judgment is **DENIED** as to the Leroy High School Assistant Principal hiring decision.[13]

### D.      *The Millry High School Principal Vacancy.*

In explaining the selection of Curtis Kirkland over Simmons for the Millry High School Principal position in October 2017, the Board indicated its determination that Kirkland "was the

---

[13]      Defendant cannot reasonably be heard to object that this outcome is unfair.  Remember that the purpose of the Eleventh Circuit's "clear and reasonably specific" requirement is that a plaintiff must "be afforded a full and fair opportunity to demonstrate pretext."  *Chapman*, 229 F.3d at 1034 (citation omitted).  If the bare, unexplained numbers on a scoresheet were deemed sufficient to satisfy a defendant's burden of production, then how could a plaintiff possibly show pretext?  In that circumstance, the defendant never would have said what the successful candidate did well, what the plaintiff did badly, or provided any factual elaboration that might enable a plaintiff to confront that reason head-on for purposes of showing pretext.  The *Chapman* rule was crafted to perpetuate fairness, not to curb it.  And its application here serves that same objective.

best candidate for the position." (Doc. 38, PageID.286.) A three-person interview committee rated Kirkland a total score of 57 points out of 72, with Simmons receiving 47 points. (Doc. 37-5, PageID.256.) Key differentiators according to the committee scores were interview, professional references, years of employment and writing assessment. (*Id.*)

In an effort to establish pretext, plaintiff argues that the Board improperly credited Kirkland for experience Kirkland did not have and also failed to credit Simmons for similar experience. As to the former point, plaintiff argues that the Board credited Kirkland with having served as Assistant Principal at Fruitdale High School from 2005 to 2008, when the evidence is to the contrary. (Doc. 44-1, PageID.328.) This contention is incorrect. It is true that in Supplemental Interrogatory Responses, the Board failed to list Kirkland as a Fruitdale High School Assistant Principal. (Doc. 44-12, PageID.358.) It is also true, however, that the Board served Third Supplemental Interrogatory Responses on plaintiff prior to summary judgment briefing. In those supplemental responses, it designated Kirkland as Fruitdale High School Assistant Principal in 2008. (Doc. 47-1, PageID.424.) Furthermore, Kirkland plainly testified in his deposition that he "became the assistant principal in 2005 and [he] was the assistant principal from 2005 until 2008 at Fruitdale." (Doc. 47-1, PageID.425.) Plaintiff has identified no contrary evidence.[14] On this record, the Court finds no facts giving rise to a reasonable inference that the Board credited Kirkland for administrative experience that he did not possess.

Next, plaintiff ascribes pretext to what he contends is the Board's decision to credit Kirkland for experience for which it did not credit Simmons. According to plaintiff, Kirkland and Simmons had done exactly the same kind of Administrative Assistant duties, yet only Kirkland was given credit for them. (Doc. 44-1, PageID.330.) This argument is not persuasive on the question of pretext for three reasons. First, as a factual matter and as discussed *supra*, the

---

[14]     To be sure, after the close of summary judgment briefing, plaintiff submitted for the first time the Declaration of Dr. Alfred Taylor, former principal of Fruitdale High School. (Doc. 49-2, PageID.468-69.) The Taylor Declaration reflects that Kirkland had been placed in an Assistant Principal position at Fruitdale, but that he "was not officially an Assistant Principal." (*Id.*, PageID.469.) The Taylor Declaration comes too late and will not be considered on summary judgment. Even if it had been submitted timely, it would make no meaningful difference to the analysis and would not support a genuine issue of material fact. The Taylor Declaration confirms that Kirkland had indeed been an Assistant Principal at Fruitdale High School. Whether he held that title "officially" or not does not alter the Court's conclusions on summary judgment.

record shows that Kirkland had held an administrative position of Assistant Principal at Fruitdale High School for four years.[15]  Simmons had not held such a comparable, officially designated position.  Second, while plaintiff touts that Simmons had six years of experience as a basketball coach and five years as part-time Administrative Assistant (*id.*), the record shows that Kirkland had ten years of experience as full-time Assistant Principal, part-time Administrative Assistant and Athletic Director (doc. 37-5, PageID.257-63).  Further, Kirkland's work as Administrative Assistant was at Millry High School – the very same school for which the Principal hire was being made – and the Board reasonably viewed his familiarity with students and staff at that campus to be an advantage in the hiring decision.  (Doc. 44-16, PageID.366.)  On this basis, the Board could reasonably have viewed Kirkland's experience as superior to Simmons' despite actually crediting the latter for his similar work history.  Third, plaintiff's argument about the Board failing to credit Simmons' experience overlooks the key fact that the relevant score sheet shows that the interview committee actually graded Simmons' experience at 7 out of 10 points, and Kirkland's experience at 6 out of 10 points.  (Doc. 37-5, PageID.256.)  In point of fact, then, the Board not only credited Simmons fully for his experience, but rated him higher overall on the experience metric than it did Kirkland.  For these reasons, plaintiff's attempts to show pretext via an argument that the Board failed to credit Simmons for experience for which it did credit Kirkland are unavailing.[16]

---

[15]     There is some confusion in the record, manifested by the fact that Superintendent Dickey stated in a March 2018 letter to the EEOC that "Kirkland ha[d] not served in an official administrative position."  (Doc. 44-16, PageID.366.)  This statement was inaccurate; moreover, the Board was aware of Kirkland's Assistant Principal experience at the time of the hiring decision because Kirkland's application included the following statement: "I have served as either an athletic director, assistant principal, or administrative assistant for ten years."  (Doc. 47-1, PageID.430.)  Defendant is not bound by the obviously inaccurate statement in the March 2018 letter to the EEOC, and plaintiff cannot drum up genuine issues of material fact by simply pointing out that discrepancy.

[16]     In so concluding, the Court has recognized and considered the EEOC's determination that the Board "credited [Kirkland] with the time held as an Administrative Assistant yet failed to credit five years of [Simmons'] experience in the same capacity."  (Doc. 44-7, PageID.350.)  Upon *de novo* review of Simmons' claims, through the lens of the summary judgment record, the Court assigns no probative value to this aspect of the EEOC's findings because the fleshed-out record reflects otherwise, even in the light most favorable to plaintiff.

-18-

In a further attempt to show pretext, plaintiff takes aim at Superintendent Dickey's statement that he contacted both applicants' supervisors during the interview process, that Kirkland's supervisor had praised him, and that Dr. Billingsley (Principal at McIntosh Elementary) "did not recommend Mr. Simmons and expressed dissatisfaction with Mr. Simmons' performance of the administrative tasks assigned to him." (Doc. 37-5, ¶ 28, PageID.202-03.) For starters, plaintiff opines that he "excelled" in his role as Administrative Assistant at McIntosh Elementary School. (Doc. 44-1, PageID.330.) Of course, a plaintiff's subjective opinion of his own job performance is irrelevant for purposes of a pretext analysis. *See, e.g., Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1148 (11th Cir. 2020) ("[t]he inquiry … centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head") (citation omitted); *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance."). Plaintiff then insists that defendant's statement that Dr. Billingsley expressed dissatisfaction with his performance is somehow "rebutted by the evidence." (Doc. 44-1, PageID.331.) It is not. Superintendent Dickey declares that he contacted Dr. Billingsley regarding Simmons, at which time she "did not recommend Mr. Simmons and expressed dissatisfaction with Mr. Simmons' performance." (Doc. 37-5, PageID.203.) No record evidence rebuts these points. In her Declaration, Dr. Billingsley confirms that she "did not provide a recommendation that [Simmons] be hired for any of the positions" for which he applied." (Doc. 37-4, ¶ 6, PageID.193.) To be sure, plaintiff presents the Declaration of Hazel White, a Reading Specialist at McIntosh Elementary, who declares that Simmons performed his administrative duties "without any problems or issues that [she was] aware of." (Doc. 44-5, ¶ 6, PageID.347.) But whether White was or was not aware of any "problems or issues" with Simmons' performance is not probative at all of whether Dr. Billingsley was satisfied with his performance.[17] There is no

---

[17] Likewise, plaintiff unsuccessfully attempts to cast doubt on whether the conversation between Superintendent Dickey and Dr. Billingsley happened at all. In that regard, Simmons states in his Declaration that he "did not request a recommendation from Dr. Billingsley." (Doc. 44-3, ¶ 27, PageID.343.) Whether Simmons requested a job recommendation from Dr. Billingsley for the Millry High School Principal position is irrelevant. Either way, Superintendent Dickey was free to contact Dr. Billingsley to ask her assessment of Simmons' performance in an administrative role. The uncontroverted evidence is that he did so, (Continued)

evidence or reason to believe that White would have known of Dr. Billingsley's dissatisfactions; therefore, no question of fact is created by virtue of White's subjective impressions of what she knew or did not know as a Reading Specialist at McIntosh Elementary.  Simply put, no inference of pretext may be derived from plaintiff's evidence.

For all of the foregoing reasons, the Court concludes that plaintiff has failed to meet his burden of coming forward with facts giving rise to a triable issue as to whether the Board acted with discriminatory intent in selecting Curtis Kirkland over Simmons for the position of Principal at Millry High School.  This record does not support a reasonable inference that the Board's stated reasons for selecting Kirkland over Simmons were pretextual and that the real reason for that promotion decision was race discrimination.  Accordingly, defendant's Motion for Summary Judgment is properly **GRANTED** with respect to Simmons' claims of race discrimination relating to the Millry High School Principal promotion decision in October 2017.[18]

## IV.   Conclusion.

For all of these reasons, it is **ORDERED** as follows:

---

and that Dr. Billingsley responded unfavorably about Simmons in that inquiry.  There is no conflict in the evidence and no genuine issue of material fact on this point.

[18]   The Court pauses to address any concerns of inconsistency in these summary judgment rulings as to the Leroy High School Assistant Principal hiring decision (as to which plaintiff's claims survive summary judgment) and the Millry High School Principal hiring decision (as to which plaintiff's claims do not).  It can be readily explained away.  In both instances, defendant identified interview performance as a reason for not selecting Simmons, despite offering no specifics to explain the manner in which Simmons interviewed poorly or the successful applicant interviewed well.  The reason for the different rulings is this:  As to the Leroy High School Assistant Principal decision, the scoresheet reflected that the scoring differences in interview performance were the deciding factor in Simmons' nonselection.  By contrast, even if Simmons had received an equal score to Kirkland in the interview category, Kirkland would still have come out ahead of Simmons in the overall scoring for the Millry High School job because of differences in the scoring in categories of professional references, writing assessment and years of employment.  Accordingly, the lack of specificity in defendant's evidence of the differences in interview scores between Simmons and Kirkland is in no way fatal to its showing of a legitimate nondiscriminatory reason for that hiring decision.  Plaintiff has not argued otherwise, but has confined that argument to the Leroy High School Assistant Principal hiring decision.  (Doc. 44-1, PageID.332-34.)

1. Defendant's Motion to Strike (doc. 48) is **DENIED** as to defendant's argument that Paragraph 6 of the Carmen Williams Declaration is speculative and lacking in personal knowledge.  In all other respects, the Motion to Strike is **MOOT** because adjudicating the evidentiary issues presented in that Motion would not affect the ultimate summary judgment rulings;

2. Defendant's Motion for Summary Judgment (doc. 36) is **GRANTED IN PART, and DENIED IN PART;**

3. The Motion for Summary Judgment is **GRANTED** as to plaintiff's claims of race discrimination pertaining to the Leroy High School Principal vacancy and the Millry High School Principal vacancy, and such claims are **DISMISSED WITH PREJUDICE;**

4. The Motion for Summary Judgment is **DENIED** as to plaintiff's claims of race discrimination pertaining to the Leroy High School Assistant Principal vacancy and those claims shall proceed to trial; and

5. This action remains set for Final Pretrial Conference before the undersigned on **July 13, 2021 at 3:00 p.m.**, with jury selection to follow on **August 3, 2021**.

DONE and ORDERED this 18th day of May, 2021.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE